FOR THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HANOVER PREST-PAVING CO. t/a HANOVER ARCHITECTURAL PRODUCTS, | : : : | CIVIL ACTION |
| Plaintiff | : : | NO. _____ |
| vs. | : : | |
| GREENRISE TECHNOLOGIES, LLC, | : : | |
| Defendant | : | |

## COMPLAINT

Plaintiff Hanover Prest-Paving Company, trading as Hanover Architectural

Products ("Hanover") hereby brings this Complaint for damages and injunctive

relief against Defendant Greenrise Technologies, LLC ("Greenrise"), and hereby

alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement under 35 U.S.C. § 271.

Greenrise has infringed and continues to infringe on United States Patent No.

8,438,805 and No. 7,918,059.

2.     Accordingly, Hanover now brings this action against Greenrise for

patent infringement under 35 U.S.C. § 271.

10644387.1

## THE PARTIES

3.      Hanover is a Pennsylvania corporation having a principal place of business at 5000 Hanover Road, Hanover, Pennsylvania 17331.

4.      Greenrise is a Tennessee corporation with a principal place of business at 525 Barker Road, Readyville, Tennessee 37149.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1332 and 1338(a).

6.      This Court has personal jurisdiction over Greenrise by virtue of the fact that Greenrise conducts substantial business in Pennsylvania.

7.      Greenrise purposefully avails itself to the privilege of conducting business in the Commonwealth of Pennsylvania, and it is its advertising and sale of products in Pennsylvania that gives rise to this action, in part.

8.      Moreover, Greenrise's unlawful conduct complained of herein has caused, and continues to cause, injury to Hanover within Pennsylvania and this District.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

# FACTUAL BACKGROUND

10.    Hanover is a 50-year-old manufacturer of quality concrete unit paving products.

11.    Hanover designed and developed a unique paver pedestal and which it patented under U.S. Patent Nos. 8,438,805 (the "'805 Patent") and 7,918,059 (the "'059 Patent") (collectively the "Hanover Patents").

12.    Hanover has invested significant time, energy, and money advertising, promoting, and selling the product that is patented under the Hanover Patents, as well as ensuring the high quality of products it sells under the Hanover Patents.

13.    Greenrise recently began to manufacture and sell products, namely those under the name GRO Fixed Head Pedestals, as shown in Exhibit A, which infringe on the Hanover Patents (the "Infringing Product").

14.    Greenrise has offered to sell and sold the Infringing Product within the United States.

i.    The '805 Patent

15.    The '805 Patent is generally directed to a pedestal useful for supporting blocks, pavers, tiles, or panels, as may be useful in providing an

10644387.1

elevated surface spaced a distance above an underlying surface. *See* '805 Patent, attached hereto as Exhibit B.

16.     Claims 1, 9 ,11, 13, and 14 of the '805 Patent read on the Infringing Product.

17.     Independent claim 1 of the '805 Patent reads a pedestal for supporting blocks, pavers, tiles, or panels a spaced distance above an underlying surface, comprising:

> a support including a support plate having an upper major surface with a plurality of upstanding walls extending upward from the upper major surface thereof to define quadrants on the support plate for receiving a section of the blocks, pavers, tiles, or panels and a fitting section recessed from the upper major surface and extending into the support plate;
>
> a sound-deadening pad wholly positioned and secured in the fitting section between the plurality of upstanding walls such that sections of the sound-deadening pad extend into different quadrants on the support plate and having a support surface for supporting the section of the blocks, pavers, tiles, or panels and extending above the upper major surface of the support plate, the pad being non-movable within the support to prevent any relative movement between the support plate and the pad;
>
> wherein the support plate and the pad are connected by a boss and recess connection arrangement there between such that the boss and recess connection arrangement cooperate to provide a self locking connection.

18.     Independent claim 9 of the '805 Patent reads a pedestal for supporting

blocks, pavers, tiles, or panels a spaced distance above an underlying surface,

comprising:

> a support including a support plate having a recessed area that
> extends from an upper major surface and into a body of the support
> plate and a plurality of upstanding walls extending upward from
> the upper major surface of the support plate and define quadrants
> for receiving a section of the blocks, pavers, tiles, or panels;

> a coating wholly disposed and secured along a bottom surface of
> the recessed area having a support surface for supporting the
> section of the blocks, pavers, tiles, or panels and extending above
> the upper major surface of the support plate, the coating being non-
> movable on the support to support the blocks, pavers, tiles, or
> panels and prevent any relative movement between the support
> plate and the blocks, pavers, tiles, or panels; and

> a boss and recess connection arrangement located in the recessed
> area and formed by the coating and a through hole extending
> through the support plate such that the boss and recess connection
> arrangement cooperate to provide a fixed self locking connection.

19.     Independent claim 11 of the '805 Patent reads a pedestal for

supporting blocks, pavers, tiles, or panels a spaced distance above an underlying

surface, comprising:

> a support including a support plate having an upper major surface
> with a plurality of upstanding walls extending upward from the
> upper major surface and defining sections for receiving the blocks,

pavers, tiles, or panels and a fitting section recessed from the upper major surface and extending into the support plate;

a sound-deadening pad wholly positioned and secured within the fitting section between the plurality of upstanding walls and having a support surface for supporting a section of the blocks, pavers, tiles, or panels and extending above the upper major surface of the support plate, the pad being non-movable within the support to prevent any relative movement between the support plate and the pad;

wherein the support plate and the pad are connected by interaction of bosses and recesses positioned in a recess area of the support such that the boss and recess connection arrangement cooperate to provide a self locking connection.

20.     Independent claim 13 of the '805 Patent reads a pedestal for supporting blocks, pavers, tiles, or panels a spaced distance above an underlying surface, comprising:

a support including a support plate having a plurality of upstanding walls extending upward from an upper major surface thereof and defining sections for receiving the blocks, pavers, tiles, or panels and a fitting section recessed from the upper major surface and extending into the support plate; and

a sound-deadening pad wholly positioned and secured in the fitting section between the plurality of upstanding walls and being non-movable within the support to prevent any relative movement between the support plate and the pad, the pad having a support surface for supporting a section of the blocks, pavers, tiles, or panels that extends above the upper surface of the support plate, as shown in the above provided images.

21.     Independent claim 14 of the '805 Patent reads a pedestal for supporting blocks, pavers, tiles, or panels a spaced distance above an underlying surface, comprising:

> a support including: a support plate having a plurality of upstanding walls extending upward from an upper major surface thereof and defining sections for receiving the blocks, pavers, tiles, or panels and a fitting section recessed from the upper major surface and extending into the support plate; and
>
> a non-movable layer of elastomeric material wholly positioned and secured in the fitting section and having a support surface for supporting a section of the blocks, pavers, tiles, or panels that extends above the upper surface of the support plate;
>
> a base at a lower end thereof having a plate extending outward from a post; and
>
> a height adjustable connection member being assembled between the support and the base.

ii.     The '059 Patent

22.     The '059 Patent is generally directed to a pedestal system for supporting blocks, pavers, tiles, or panels, as may be useful in providing an elevated surface spaced a distance above an underlying surface. *See* '059 Patent, attached hereto as Exhibit B.

23.    Claims 1, 7 and 9 of the '059 Patent read on the Infringing Product.

24.    Independent claim 1 of the '059 Patent reads a pedestal for supporting blocks, pavers, tiles, or panels a spaced distance above an underlying surface, comprising:

> a base at a lower end thereof having a plate extending outward from a post;

> a reinforcement wall extending between the plate and the post and having a first eyelet formed therein, the first eyelet is located at a corner where the post interconnects with the reinforcement wall;

> a support at an upper end thereof for supporting the blocks, pavers, tiles, or panels thereon, the support being adjustably mounted relative to the base for altering an overall height of the pedestal;

> a coupler being adjustably located between the support and the base for further altering the overall height of the pedestal;

> a flange that extends circumferentially about the coupler; and,

> a plurality of spaced-apart second eyelets extending through the flange.

25.    Independent claim 7 of the '059 Patent reads a pedestal system for supporting blocks, pavers, tiles, or panels a spaced distance above an underlying surface, comprising:

a plurality of pedestals each having a base;

each base having a plate located on the underlying surface extending outward from a post, a reinforcement wall extending between the plate and the post, and a base eyelet located at a corner where the post interconnects with the reinforcement wall;

a support at an upper end of each pedestal for supporting the blocks, pavers, tiles, or panels thereon, the support being adjustably mounted relative to the base for altering an overall height of the pedestal;

couplers being adjustably located between the supports and the bases for further altering the overall height of the pedestals;

a flange extending circumferentially about each coupler;

a plurality of spaced-apart securement eyelets extending through each flange; and,

wire bracing extending between the base and securement eyelets such the bracing spans an area extending downward from the couplers to the plates of the bases on the underlying surface.

26.     Independent claim 9 of the '059 Patent reads a pedestal for supporting blocks, pavers, tiles, or panels a spaced distance above an underlying surface, comprising:

a base at a lower end thereof having a plate extending outward from a hollow post;

a reinforcement wall extending between the plate and the post and having a first eyelet formed therein;

a support at an upper end thereof for supporting the blocks, pavers, tiles, or panels thereon, the support being adjustably mounted relative to the base for altering an overall height of the pedestal;

a coupler being adjustably located between the support and the base for further altering the overall height of the pedestal;

a flange that extends circumferentially about the coupler;

a plurality of spaced-apart second eyelets extending through the flange; and

drainage openings formed in the base, wherein at least one of the drainage openings is in communication with the first eyelet and an inside of the hollow post.

27.     At the time Greenrise chose to produce, manufacture, advertise, and sell the Infringing Product, it was well-aware of Hanover's rights and its infringement.

28.     Though Hanover has sent Greenrise several correspondences notifying it of its patent infringement and demanding that it immediately remove the products infringing on the Hanover Patents from the marketplace, Greenrise has nevertheless willfully refused to take any action to abate its continuing infringements and violations of Hanover's rights.

29.    Greenrise continues to produce and market its Infringing Product.

30.    Greenrise's conduct is willful and represents a conscious disregard for Hanover's rights.

## COUNT ONE:
## PATENT INFRINGEMENT

31.    Hanover repeats and realleges all foregoing paragraphs as if fully set forth herein.

32.    Greenrise has directly infringed, and continues to directly infringe at least Claims 1, 9 ,11, 13, and 14 of the '805 Patent and Claims 1, 7 and 9 of the '059 Patent.

33.    Greenrise has infringed on the Hanover Patents by its manufacture, sale, and advertisement of the Infringing Product.

34.    Greenrises' infringement of the Hanover Patents has been and continues to be willful under 35 U.S.C. § 284 because Greeneise has acted with knowledge of the Hanover Patents and knowledge and notice that its actions constitute infringement of the Hanover Patents, or has at least acted with knowledge of an objectively high likelihood that their actions constitute infringement of the Hanover Patents.

35.     Greenrises' actions render this an exceptional case under 35 U.S.C. § 285.

36.     Hanover has complied with the statutory requirement of giving notice of the Hanover Patents to Greenrise by sending correspondence beginning in January 2023 to Greenrise, in which Hanover identified and provided a copy of the Hanover Patents and alleged that the Infringing Product infringed on the Hanover Patents.

## CLAIM FOR RELIEF

Hanover respectfully requests that this Court award the following relief:

A.     Enter a permanent injunction enjoining and restraining Greenrise from manufacturing, producing, advertising, or selling the Infringing Product;

B.     An accounting and judgment against Greenrise for all profits or other income received from or in connection with the Infringing Product;

C.     Such other and further relief as the equities of the case may require and as this Court may deem just and proper under the circumstances.

BARLEY SNYDER

By: */s/Justin A. Tomevi*
       Justin Tomevi, Esquire (313661)
       jtomevi@barley.com
       Lindsey M. Cook, Esquire (323326)
       lcook@barley.com
       100 East Market Street
       York, PA 17401
       717-846-8888
       Fax: 717-843-8492
       Attorneys for Plaintiff

Date: 8/18/2023

10644387.1